```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x
In re:                            :

CHARLES CLIFTON EARLE, IV         :    BK No. 05-15532
          Debtor                       Chapter 7
                                  :
PHOEBE MORSE, UNITED STATES
TRUSTEE                           :
          Plaintiff
v.                                :    A.P. No. 06-1060

CHARLES CLIFTON EARLE, IV         :
          Defendant
- - - - - - - - - - - - - - - - -x
```

## ORDER DENYING MOTION FOR RECUSAL

On October 3, 2007, Charles Clifton Earle, IV filed a "Motion For Recusal," alleging essentially that there was no basis for the Court to state on the record "Mr. Earle is a fast talking con artist." Earle complains that this statement was made by the Court without making findings of fact or taking any testimony, and was therefore "grossly inappropriate."

In considering a motion for recusal,

> The proper test, it has been held, is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. s 455, but rather in the mind of the reasonable man.

*United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976), *cert. denied*, 430 U.S. 909 (1977); *see also Liteky v. United States*, 510 U.S. 540, 553 (1994); *In re Petit*, 204 B.R. 271, 273-74 (Bankr. D.

BK No. 05-15532, A.P. No. 06-1060

Me. 1997).  "'Disqualification for lack of impartiality must have a reasonable basis.  Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial.'"  *Cowden*, 545 F.2d at 265 (*quoting* H. Rep. No.1453, 93d Cong., 2d Sess., 1974 U.S. Code Cong. & Admin. News p. 6355).  Furthermore, the law is well settled "that one seeking the disqualification of the judge must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *See United States v. Kelly*, 519 F.Supp. 1029, 1050 (D. Mass. 1981).

Upon consideration of the motion, the timing, and the context in which it is made, I find that Mr. Earle has failed to state a prima facie case for my disqualification.  The statement which Mr. Earle finds offensive was made only after repeated hearings which were prompted by the United States Trustee's ("UST") requests for the entry of default, based on Earle's failure to respond to outstanding discovery.  At those many hearings the Court had the opportunity to see and hear the Debtor's cumulative explanations for why he had not complied with discovery orders.[1]

---

[1] While Mr. Earle was not provided with a daily scorecard as to how his excuses were being received by the Court, he became increasingly less credible, as his list of broken promises got

2

BK No. 05-15532, A.P. No. 06-1060

The survivability of this case took a sharp turn for the worse in January 2007, when Earle's lawyer was allowed to withdraw, without objection. At that time, Earle was already delinquent in responding to the UST's discovery requests, so a status hearing was held on January 24, 2007, to try and get the case back on a reasonable discovery track, *see* Order Granting Motion to Withdraw, Doc. No. 26. At that hearing, Earle appeared *pro se* for the first time. At the conclusion of the status conference, after hearing Earle's tales of woe in Court, and after conferencing privately, the parties announced an agreement that Earle would respond to all outstanding discovery by March 26, 2007 – four months beyond the original discovery deadline. *See* Scheduling Order, Doc. No. 32. On April 9, 2007, the UST filed a motion for entry of default on the ground that Earle had failed to comply with the agreed upon amended discovery deadline.

On May 16, 2007, at the initial hearing on the UST's motion for default, I heard extensively from Earle about his inability to obtain new counsel.[2] Unwisely, in hindsight, I denied the UST's request for default, gave Earle until May 23, 2007, to obtain

---

longer.

[2] Prior to issuing this Order, we listened to the entire May 16, 2007 hearing to be certain as to Earle's representations, as no written order entered after that hearing.

BK No. 05-15532, A.P. No. 06-1060

counsel, and ordered that all responses to discovery be provided by June 22, 2007. I stated at the conclusion of the hearing that "if that deadline goes by without [providing] the discovery, I am going to grant the ... [UST's] request that you be defaulted." Earle responded: "I understand. Thank you for your consideration."

Just prior to the June 2007 deadline, Earle served what purported to be responses to the outstanding discovery. According to the UST, many of the responses contained improper (and needless to say, late) objections, some answers were evasive, some were incomplete, and essentially there still was a total failure of compliance with the required document production. This prompted a second Motion for Default by the UST, and another hearing was scheduled for August 9, 2007. On the date of the hearing, Earle did not appear, and instead filed a motion for continuance, alleging that he was not feeling well. On August 10, 2007, an Order entered continuing the hearing for one week and requiring Earle to produce complete responses to the outstanding discovery by 4:00 p.m. on August 15, 2007. *See* Doc. No. 51. On August 16, 2007, another hearing was held on the UST's motion for default wherein the UST reported that Earle had dropped off four large boxes of original documents to the UST's office at 3:55 p.m. on August 15, 2007. The documents were not organized or indexed, and

BK No. 05-15532, A.P. No. 06-1060

Earle required that some of the documents be returned to him within five days, because he needed them to complete his tax returns. The Court interrupted the hearing, and again offered the parties time to confer. Again, they reported having reached an agreement wherein Earle would retrieve the documents from the UST, organize them, and provide copies to the UST by noon on August 30, 2007. Earle would also file his answers to interrogatories by that time.

On August 31, 2007, the UST filed a notice stating that she had received nothing from Mr. Earle pursuant to their agreement, so on September 5, 2007, yet another hearing was held. Peter Berman, Esq., appeared and stated that he had not been retained by Mr. Earle, but that if the Court would give him 45 days to get up to speed in the case, he would enter his appearance for Earle. That request was summarily rejected. The Court also heard extensively from Mr. Earle. When he was finished, and hearing only more of the same (if this were printed, it would be an expletive), I granted the UST's request for default, adding that Mr. Earle was "a fast talking con artist."

Before finally ruling on the Motion for Entry of Default, I saw and heard Mr. Earle on at least four occasions, and was very familiar with the travel of the discovery proceedings and the many opportunities that were provided to Earle to comply with prior

5

BK No. 05-15532, A.P. No. 06-1060

orders. It was with this background that I ruled against Earle and and expressed the belief that over time he had lost all credibility with the Court.

An adverse finding against a litigant based upon a significant record does not equate to a lack of impartiality. *See Liteky,* 510 U.S. at 550-551 (a judge is not recusable for bias or prejudice if the knowledge and opinion of the judge was acquired properly during the course of the proceeding or earlier proceedings). Upon review of the record, I am embarrassed at having as extensively overindulged him, and in retrospect state that my comments regarding Mr. Earle were considerably understated. Accordingly, the Motion for Recusal is DENIED.

Dated at Providence, Rhode Island, this 5th day of November, 2007.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 11/5/2007